MERRITT & CHAPMAN DERRICK & WRECKING CO. v. VOGEMAN.

(District Court, S. D. New York. December 6, 1905.)

SHIPPING—DEMURRAGE—DERRICKS EMPLOYED FOR LOADING CARGO.

Respondent, as agent for certain steamships, *held* not liable for demurrage, because derricks of libelant hired by a shipper to transport locomotives in parts to the steamships and by respondent to hoist the same on board and into the holds at a stipulated price for each were not allowed to deliver the same as rapidly as they could have done, where the parts were received and stowed with reasonable skill and dispatch, and the delay resulted from the character of the cargo and the manner in which it was loaded on the derricks, and it further appeared that libelant furnished a larger number of derricks than could conveniently be discharged at the same time.

[Ed. Note.—Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

In Admiralty. Suit for demurrage.

Avery F. Cushman, for libelant.

Butler, Notman & Mynderse, for respondents.

ADAMS, District Judge. The original libel in this action, filed to recover alleged demurrage of certain derricks belonging to the libelant from the firm trading under the name of H. Vogeman, the agents of a line of steamships in which were running the Tripoli and Etonian, was excepted to because it failed to allege any contract binding upon the respondents or the breach of any duty owing by them to the libelant. The exceptions were sustained—127 Fed. 770—and the libelant amended by making some minor changes in the verbiage and by alleging as follows:

"Eighth: That the said merchandise referred to in the second, third, fourth, fifth and sixth paragraphs of the libel herein consisted of twenty locomotives and the merchandise referred to in the seventh paragraph consisted of two locomotives. That the said vessels took the said twenty locomotives from Jersey City, New Jersey, and transported the same to the said steamship 'Tripoli' at the instance of the Baldwin Locomotive Works and transported under like conditions the said two locomotives to the Steamship 'Etonian.' That the lighterage only to the vessels' side was for the account of the said Baldwin Locomotive Works and that the said vessels were under the control of the respondent thereafter as the respondent by a contract duly made with the libelant, employed the libelant, by means of the derricks and hoisting apparatus which were attached to each of the said vessels above named to hoist the said twenty locomotives to the deck and into the hold of the said steamship 'Tripoli' within a reasonable time after the said vessels arrived alongside, and agreed to pay the sum of $30 for each locomotive so hoisted.

That the libelant performed the said work and received its pay for the hoisting from the respondent; that the respondent had full control of the said steamships and of the receiving of the said cargo thereon and neglected and refused to receive the said locomotives or permit the libelant to hoist the same on the deck and into the hold of said steamships within a reasonable time after the arrival of said boats alongside and after he was notified that the libelant was ready to hoist the said cargo on the deck and into the hold of the said steamships. That the respondent was duly notified by the libelant that it would hold him responsible for each and every day's delay beyond a reasonable time that each vessel was delayed by reason of his refusal to permit the libelant to hoist said cargo onto the deck and into the hold of said steamships pursuant to its said employment, and that the said derricks were severally detained by the respondent over and above the proper and reasonable time to complete the work of hoisting the said locomotives upon the deck and into the hold of the steamships and thus discharge their cargoes for the following periods:

"The derrick 'Edgar,' from April 11th to April 25, 1901, the date of discharge, both dates inclusive, a period of fifteen days; the derrick 'Chief' from April 13th to April 16th, 1901, the date of discharge, both dates inclusive, and from April 22nd to April 26th, 1901, the date of discharge, both dates inclusive, a period of nine days; the derrick 'Atlas' from the 20th of April to the 22nd of April, 1901, the date of discharge, both dates inclusive, a period of three days; the derrick 'W. H. Morse' the 21st and 22nd of April, 1901, the date of discharge, both dates inclusive, a period of two days; the derrick 'Alfred' May 14th, 1901, the date of discharge, a period of one day."

The libel was subsequently amended by making some further minor changes in the language and alleging that by the custom of the Port of New York and by the Rules of the Maritime Association of the port regulating lighterage, all of which were well known to the respondents, the libelant was entitled to charge the respondents and receive from them demurrage for the detention of the lighters (derricks) beyond a reasonable time.

Upon the libel as amended the action was brought to trial and it appeared that the lighters or derricks did suffer some delay and the question to be determined is were the respondents in fault therefor so as to make them liable in damages.

The locomotives were in parts and came by rail to Jersey City from Philadelphia. When they reached Jersey City the lighters did not receive quick despatch but were somewhat delayed. This was caused by the manner in which the goods were loaded, that is, the manner in which the parts were distributed. The respondents employed the libelant to hoist the locomotives from the lighters into their steamers at $30 each. The sums due therefor have been paid. No contract, however, was made concerning the time within which the loading should take place and there is no liability by reason of any express contract. On the question of implied contract, no doubt the goods could have been handled more expeditiously if they had been properly packed or furnished to the steamers in a different way, but it has not been made apparent how the respondents are liable in such respect. They did not need the constant services of the libelant's vessels. Their duty was simply to take the goods in a reasonable manner and this they apparently did. They were not in a position to take the goods all at once. It was necessary to provide spaces for them which required arrangement of the parts when they were delivered. Instead

of giving the respondents an opportunity of adjusting the matter in a convenient and economical manner, the libelant sent the vessels to them practically all at once and afforded them no chance of providing for their reception. The steamers could only be laden properly by the receipt of the parts of the locomotives when they were needed in the loading and as the lighters were loaded apparently without regard to the steamers' convenience, what delay there was resulted from no fault on their part.

The respondents naturally expected that the parts of the locomotives would be delivered to them gradually and in proper order. I do not see how under the circumstances they can properly be charged with default. The testimony shows that they received the goods and stowed them with reasonable skill and despatch. They could not be expected to provide on the steamers for the immediate receipt of all goods, in view of the fact that it was necessary that the heavier parts should be stowed on the bottom. It was evidently a mistake to send several derricks at the same time to the steamers, when one would have been sufficient to do all the hoisting required and the other derricks as such were useless. But I do not see how there can be any proper recovery for the use of the vessels as lighters in the absence of any unnecessary detention on the respondent's part. It appears that the goods were taken as fast as they could be cared for by the steamers and there is no evidence to sustain a charge of neglect in this or in any other respect. What delay there was, was doubtless attributable to the manner in which the lighters were loaded and that was a matter with which the respondents had nothing to do. Their testimony is to the effect that the Locomotive Works agreed to supply the parts of the locomotives in such a way as the respondents wanted them.

The libel will be dismissed.